UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BOOTH FAMILY TRUST, On Behalf of Itself and All Others Similarly Situated, | § § § | Civil Action No. 4:17-cv-01457 |
| Plaintiff, | § § | |
| v. | § § | |
| BAKER HUGHES INCORPORATED, MARTIN S. CRAIGHEAD, GREGORY D. BRENNEMAN, CLARENCE P. CAZALOT, JR., WILLIAM H. EASTER III, LYNN L. ELSENANS, ANTHONY G. FERNANDES, CLAIRE W. GARGALLI, PIERRE H. JUNGELS, JAMES A. LASH, J. LARRY NICHOLS, JAMES W. STEWART, and CHARLES L. WATSON, | § § § § § § § § § | |
| Defendants. | § § | |

**CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS**

Plaintiff Booth Family Trust ("Plaintiff"), by and through its undersigned counsel, for its complaint against Defendants, alleges upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is a class action brought on behalf of the public stockholders of Baker Hughes Incorporated ("Baker Hughes" or the "Company") against Baker Hughes and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder and to enjoin the vote on a proposed transaction, pursuant to which

Baker Hughes will combine with General Electric Company's ("GE") oil and gas business ("GE O&G") through certain subsidiaries of the Company (the "Proposed Transaction").

2.     On October 31, 2016, Baker Hughes and GE issued a press release announcing that they had entered into a Transaction Agreement and Plan of Merger, which was subsequently amended on March 27, 2017 (the "Merger Agreement"), to combine Baker Hughes with GE O&G.   Under the terms of the Merger Agreement, (i) Baker Hughes will merge with Bear Merger Sub 2, Inc. ("Merger Sub 2"), with Baker Hughes surviving the merger as a direct wholly owned subsidiary of BHI Newco, Inc. ("Newco 2") (the "First Merger"); (ii) the surviving corporation of the First Merger (Baker Hughes) will be converted into Newco LLC (the "Conversion"); (iii) Newco 2 will merge with and into Bear Newco, Inc. ("New Baker Hughes"), with New Baker Hughes surviving the merger (the "Second Merger" and collectively with the First Merger, the "Mergers"); and (iv) following the Mergers and the Conversion, GE will transfer to Newco LLC in exchange for approximately 62.5% of the membership interests in Newco LLC, (1) all of the equity interests of the GE O&G holding companies that will hold directly or indirectly all of the assets and liabilities of GE O&G, including any GE O&G operating subsidiaries, and (2) $7.4 billion in cash (the "Contribution").

3.     As a result of the First Merger, each issued and outstanding share of Baker Hughes common stock will be converted into the right to receive one share of Newco 2 common stock.  As a result of the Second Merger, each issued and outstanding share of Newco 2 common stock will be converted into the right to receive one share of New Baker Hughes common stock. Following the Mergers and the Conversion, New Baker Hughes will distribute a special dividend equal to $17.50 per share of New Baker Hughes common stock (the "Dividend").

4.     On March 29, 2017, Baker Hughes and GE filed with the United States Securities and Exchange Commission ("SEC") a joint Registration Statement on Form S-4, which was amended on May 9, 2017 (the "Registration Statement"), in connection with the Proposed Transaction.  The Registration Statement, which recommends that Baker Hughes stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the GE O&G Forecasts, Baker Hughes Forecasts, Baker Hughes Forecasts for GE O&G and the New Baker Hughes Forecasts, utilized by the Company's financial advisor, Goldman, Sachs & Co. ("Goldman"), in its financial analyses; (ii) the valuation analyses prepared by Goldman in connection with the rendering of its fairness opinion; and (iii) the background and sale process leading up to the Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Baker Hughes stockholders need such information in order to cast a fully informed vote in connection with the Proposed Transaction.

5.     In short, unless remedied, Baker Hughes' public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      This Court has jurisdiction over Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Baker Hughes is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

**PARTIES**

9.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Baker Hughes.

10.     Defendant Baker Hughes is a Delaware corporation with its principal executive offices located at 17021 Aldine Westfield Road, Houston, Texas, 77073.  The Company is a supplier of oilfield services, products, technology and systems for the oil and natural gas industry.  Baker Hughes' common stock is traded on the New York Stock Exchange under the ticker symbol "BHI."

11.     Defendant Martin S. Craighead ("Craighead") has been Chief Executive Officer ("CEO") of the Company since January 2012, President of the Company since 2010, Chairman of the Board since April 2013 and a director of the Company since 2011.

12.     Defendant Gregory D. Brenneman ("Brenneman") has been a director of the Company since 2014.

13. Defendant Clarence P. Cazalot, Jr. ("Cazalot") has been a director of the Company since 2002.

14. Defendant William H. Easter III ("Easter") has been a director of the Company since 2014.

15. Defendant Lynn L. Elsenhans ("Elsenhans") has been a director of the Company since 2012.

16. Defendant Anthony G. Fernandes ("Fernandes") has been a director of the Company since 2001.

17. Defendant Claire W. Gargalli ("Gargalli") has been a director of the Company since 1998.

18. Defendant Pierre H. Jungels ("Jungels") has been a director of the Company since 2006.

19. Defendant James A. Lash ("Lash") has been a director of the Company since 2002.

20. Defendant J. Larry Nichols ("Nichols") has been a director of the Company since 2001.

21. Defendant James W. Stewart ("Stewart") has been a director of the Company since 2010.

22. Defendant Charles L. Watson ("Watson") has been a director of the Company since 1998.

23. Defendants Craighead, Brenneman, Cazalot, Easter, Elsenhans, Fernandes, Gargalli, Jungels, Lash, Nichols, Stewart, and Watson are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

24.     GE is a New York corporation with its corporate headquarters located at 41 Farnsworth Street, Boston, Massachusetts, 02210.  GE was incorporated in 1892 and is a global digital industrial company.  GE's common stock is traded on the New York Stock Exchange under the ticker symbol "GE."

25.     GE O&G is part of GE and serves segments across the oil and gas industry, from drilling, completion, production and oilfield operations, to transportation as liquefied natural gas or via pipelines.

26.     New Baker Hughes is a Delaware corporation and holding company whose principal asset will be the indirect ownership of common units representing approximately 37.5% of the interests in Newco LLC.

27.     Newco 2 is a Delaware corporation and is wholly owned by Baker Hughes.

28.     Merger Sub 2 is a Delaware corporation and is wholly and directly owned by Newco 2.

29.     Newco LLC is a Delaware limited liability company.  Baker Hughes, the surviving entity of the First Merger, will convert into Newco LLC.  As a result of the Proposed Transaction, Newco LLC will own the combined businesses of Baker Hughes and GE O&G.

**CLASS ACTION ALLEGATIONS**

30.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Baker Hughes common stock (the "Class").  Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

31.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

32.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of March 3, 2017, there were 425,349,196 shares of Company common stock issued and outstanding.  All members of the Class may be identified from records maintained by Baker Hughes or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

33.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

34.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

35.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

36.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Company Background and Strong Financial Outlook

37.     Baker Hughes is a leading supplier of oilfield services, products, technology and systems in the worldwide oil and natural gas industry.  The Company also provides products and services for other businesses, including downstream chemicals, and process and pipeline services.  Baker Hughes' global oilfield operations are organized into a number of geomarket organizations, which are combined into four regions for assessing performance and allocating resources.   These regions form the basis of the Company's four geographical operating segments: North America; Latin America; Europe/Africa/Russia Caspian; and Middle East/Asia Pacific.   The geographic organization supports the Company's oilfield operations and is responsible for sales, field operations and site execution.   Certain support operations are organized at the enterprise level and include the supply chain and product line technology organizations.

38.     On November 16, 2014, Baker Hughes and Halliburton Company ("Halliburton") entered into a merger agreement under which Halliburton would acquire Baker Hughes in a stock and cash transaction.  On April 30, 2016, the parties agreed to terminate the merger agreement due to the inability to obtain certain antitrust approvals.

39.     On January 26, 2017, the Company issued a press release announcing its fourth quarter and full year 2016 financial results.  Defendant Craighead discussed the results as follows:

During 2016, against the back-drop of another difficult year for the industry, we achieved significant progress on our commitment to improve financial performance by reducing operational costs, optimizing our capital structure, and strengthening our commercial strategy.

In the second half of 2016, we reduced annualized costs by nearly $700 million, exceeding our initial goal by almost 40%, paid down $1 billion in debt, repurchased more than $750 million in shares, accelerated innovation with nearly 70 new product introductions, and built new sales channels for our products and technology. As we executed on an asset-light strategy to strengthen profitability and return on invested capital, we rationalized under-performing product lines in select markets and contributed our North America land pressure pumping business into a new venture that is exceptionally well positioned to participate efficiently and cost-effectively in the growth of this market segment.

For the fourth quarter, revenue increased 2% sequentially as a result of increased activity in North America, uplift from better-than-expected seasonal year-end product sales, and pockets of growth internationally, primarily in the Middle East. This was partially offset by reduced activity across the North Sea resulting from labor union strikes, weather delays, and project postponements.

* * *

Looking ahead for the first half of 2017, we expect onshore revenue in North America to increase as our customers ramp up activity, with service pricing improving but limited by overcapacity.

**The Sale Process**

40. During the process of seeking regulatory approvals for the Halliburton transaction, on October 30, 2015, Baker Hughes and GE Oil & Gas UK Limited, a subsidiary of GE, entered into a confidentiality agreement in connection with GE O&G's possible acquisition of, among other things, Baker Hughes' core completions business, sand control business in the Gulf of Mexico and offshore cementing businesses, in the event such businesses were divested in connection with the Halliburton transaction. Baker Hughes also entered into similar confidentiality agreements with other strategic companies and financial sponsors that expressed an interest in such acquisitions. The Registration Statement fails to disclose whether these

confidentiality agreements contained standstill provisions that are still in effect and operate to preclude those parties from submitting a topping bid for the Company.

41.     On April 30, 2016, Baker Hughes and Halliburton terminated the merger agreement.

42.     On May 9, 2016, Defendant Craighead met with Lorenzo Simonelli ("Simonelli"), President and CEO of GE O&G, to discuss potential areas of collaboration between the two companies.

43.     On May 17, 2016, Baker Hughes and GE Oil & Gas UK Limited entered into a confidentiality agreement.  Over the next few months, the parties met from time to time to continue discussions.

44.     On September 15, 2016, Defendant Craighead, Simonelli and Jeffrey Immelt ("Immelt"), CEO and Chairman of GE, met to discuss the possibility of a broader potential strategic combination.  Immelt proposed a structure with GE acquiring majority ownership in a new combined company that would not result in GE acquiring 100% of Baker Hughes' common stock.

45.     Beginning on September 27, 2016, through signing of the Merger Agreement, Baker Hughes, GE and their respective advisors conducted due diligence.

46.     On October 7, 2016, Defendant Craighead, Immelt and Simonelli met to discuss GE's proposed transaction.  Immelt initially proposed that GE would contribute the GE O&G business and $6 billion in cash to fund a special cash dividend to Baker Hughes stockholders, and in exchange, GE would receive 65% of the equity of the new combined entity and Baker Hughes stockholders would receive the special dividend and 35%, in the aggregate, of the equity

of the new combined entity.    Following discussions, Immelt proposed a $7 billion cash contribution, with the same remaining terms.

47.    On October 13, 2016, Immelt indicated that GE's "best and final" offer, one he had proposed earlier that day, was that GE would contribute the GE O&G business and $7.4 billion in cash to fund a special cash dividend to Baker Hughes stockholders, and in exchange, GE would receive 62.5% of the equity in the new combined entity and Baker Hughes stockholders would receive the special dividend and 37.5% of the equity in the new combined entity.

48.    Over the next few weeks, the parties and their advisors negotiated remaining terms of the transaction and the terms of the Merger Agreement.

49.    On October 30, 2016, the Board held a special meeting to review the terms of the proposed transaction.    Goldman delivered its fairness opinion and the Board approved the Merger Agreement.  The parties then executed the Merger Agreement.

**The Proposed Transaction**

50.    On October 31, 2016, Baker Hughes and GE issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> BOSTON & HOUSTON--Oct. 31, 2016-- GE (NYSE:GE) and Baker Hughes (NYSE:BHI) today announced that the companies have entered into an agreement to combine GE's oil and gas business ("GE Oil & Gas") and Baker Hughes to create a world-leading oilfield technology provider with a unique mix of service and equipment capabilities.    The "New" Baker Hughes will be a leading equipment, technology and services provider in the oil and gas industry with $32 billion of combined revenue[1] and operations in more than 120 countries.  By drawing from GE technology expertise and Baker Hughes capabilities in oilfield services, the new company will provide best-in-class physical and digital technology solutions for customer productivity.
>
> Under the terms of the agreement, which has been unanimously approved by the boards of directors of both companies, at the closing of the transaction Baker Hughes shareholders will receive a special one-time cash dividend of $17.50 per

share and 37.5% of the new company. GE will own 62.5% of the company.  The transaction is expected to close in mid 2017.

"This transaction creates an industry leader, one that is ideally positioned to grow in any market. Oil & gas customers demand more productive solutions.  This can only be achieved through technical innovation and service execution, the hallmarks of GE and Baker Hughes," said Jeff Immelt, Chairman and Chief Executive Officer of GE.  "As we built the GE Oil & Gas business, I have always been impressed by the respect our customers have for Baker Hughes.  GE Oil & Gas is a key GE business, one that fully leverages the GE Store.  As we go forward, this transaction accelerates our capability to extend the digital framework to the oil and gas industry.  An oilfield service platform is essential to deliver digitally enabled offerings to our customers.  We expect Predix to become an industry standard and synonymous with improved customer outcomes.  GE investors will benefit through ownership of a stronger business with substantial synergies and an improved competitive position.  The transaction is expected to add approximately $.04 to GE EPS in 2018, $.08 by 2020."

\* \* \*

**Financial Structure**

The transaction will be executed using a partnership structure, pursuant to which GE Oil & Gas and Baker Hughes will each contribute their operating assets to a newly formed partnership.  GE will have a 62.5% interest in this partnership and existing Baker Hughes shareholders will have a 37.5% interest through a newly NYSE listed corporation.  Baker Hughes shareholders will also receive a special one-time cash dividend of $17.50 per share at closing.   The $7.4 billion contributed by GE to the new partnership will be used to fund the cash dividend to existing Baker Hughes shareholders.

**Headquarters, Management and Board of Directors**

The "New" Baker Hughes will have dual headquarters in Houston, Texas and London, UK.

Jeff Immelt, Chairman and CEO of GE will serve as Chairman of the Board of Directors and Lorenzo Simonelli, president and CEO of GE Oil & Gas will serve as President and Chief Executive Officer.  Martin Craighead, Baker Hughes Chairman and CEO, will serve as Vice Chairman of the Board.  The remainder of the executive leadership team will be a combination of existing leaders from both GE and Baker Hughes.

Upon closing, the "New" Baker Hughes board will consist of nine directors: five of whom, including Chairman Jeff Immelt will be appointed by GE and four, including Vice Chairman Martin Craighead will be appointed by Baker Hughes.

**Insiders' Interests in the Proposed Transaction**

51.     GE and Baker Hughes insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Baker Hughes.

52.     Notably, Defendant Craighead and four other Company directors have secured positions for themselves following completion of the Proposed Transaction.   Defendant Craighead will serve as Vice Chairman of the New Baker Hughes board of directors and Defendants Brenneman, Cazalot, Elsenhans and Nichols will also serve as directors of the New Baker Hughes board.

53.     Moreover, Company insiders stand to reap substantial financial benefits for securing the deal with GE.  Pursuant to the Merger Agreement, upon consummation of the Proposed Transaction, Baker Hughes' named executive officers and directors will receive cash payments from the immediate vesting of their restricted stock and restricted stock units.

54.     Further, if they are terminated in connection with the Proposed Transaction, the Company's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation.  Indeed, if Defendant Craighead is not retained following the combination, he stands to receive over $41.4 million in golden parachute compensation.   The following table summarizes the golden parachute compensation the Company's named executive officers stand to receive in connection with the Proposed Transaction:

| Name | Cash (1) ($) | Equity (2) ($) | Pension/ NQDC (3) ($) | Perquisites/ Benefits (4) ($) | Tax Reimbursement (5) ($) | Total ($) |
|---|---|---|---|---|---|---|
| *Named Executive Officers* | | | | | | |
| Martin S. Craighead, Chairman and Chief Executive Officer | 12,800,920 | 21,598,106 | 0 | 58,335 | 7,585,499 | 42,042,860 |
| Kimberly Ross, Senior Vice President, Chief Financial Officer | 6,433,578 | 8,523,780 | 235,534 | 47,215 | 0 | 15,240,107 |
| Alan R. Crain, Former Senior Vice President, Chief Legal and Governance Officer | 0 | 0 | 0 | 0 | 0 | 0 |
| Belgacem Chariag, President, Global Operations | 5,660,358 | 9,488,701 | 0 | 57,687 | 3,154,173 | 18,360,919 |
| Derek Mathieson, Chief Commercial Officer | 5,157,692 | 5,338,099 | 0 | 57,609 | 0 | 10,553,400 |
| *Other Executive Officers* | | | | | | |
| Archana Deskus, Vice President and Chief Information Officer | 2,717,960 | 3,008,434 | 0 | 61,386 | 0 | 5,787,780 |
| Jack Hinton, Vice President, Health, Safety and Environment | 1,348,624 | 715,795 | 0 | 40,280 | 0 | 2,104,699 |
| Kelly Janzen, Vice President, Controller and Chief Accounting Officer | 1,213,600 | 980,572 | 364 | 24,775 | 0 | 2,219,311 |
| Murali Kuppuswamy, Chief Human Resources Officer | 2,737,318 | 2,627,103 | 0 | 42,229 | 1,411,196 | 6,817,846 |
| William D. Marsh, Vice President and General Counsel | 3,816,446 | 3,164,416 | 0 | 71,801 | 2,219,601 | 9,272,264 |
| Jay G. Martin, Vice President and Chief Compliance Officer | 1,276,833 | 1,138,680 | 0 | 27,839 | 0 | 2,443,352 |
| Arthur L. Soucy, President, Products and Technology | 5,281,039 | 7,759,817 | 0 | 52,562 | 2,858,346 | 15,951,764 |
| Richard L. Williams (6) , Senior Advisor to the Executive Leadership Team | 4,886,451 | 5,614,216 | 0 | 46,956 | 2,726,317 | 13,273,940 |

## The Registration Statement Contains Numerous Material Misstatements or Omissions

55.     On May 9, 2017, Defendants filed the materially incomplete and misleading Registration Statement with the SEC and disseminated it to Baker Hughes' stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

56.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially

misleading information concerning the (i) GE O&G Forecasts, Baker Hughes Forecasts, Baker Hughes Forecasts for GE O&G and the New Baker Hughes Forecasts, utilized by the Company's financial advisor, Goldman, in its financial analyses; (ii) the valuation analyses performed by Goldman in connection with the rendering of its fairness opinion; and (iii) the background and sale process leading up to the Proposed Transaction.  Accordingly, Baker Hughes stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Baker Hughes' and GE's Financial Projections***

57.    With respect to the GE O&G Forecasts, Baker Hughes Forecasts, Baker Hughes Forecasts for GE O&G and the New Baker Hughes Forecasts relied upon by Goldman in performing its analyses, the Registration Statement discloses projections for various non-GAAP metrics including EBITDA and Free Cash Flow but fails to provide line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to GAAP.  The omission of the aforementioned line item projections renders the non-GAAP projections included in the Registration Statement materially misleading and incomplete.

58.    The importance of reconciling between GAAP and non-GAAP financial measures has long been widely acknowledged.  The SEC adopted "Regulation G" in 2003, in response to the mandate set forth in Section 401(b) of the Sarbanes-Oxley Act that rules be enacted to regulate the use of pro forma financial information.  Regulation G prohibits the use of non-GAAP financial measures outside of SEC filings unless they are accompanied by the most directly comparable GAAP accounting measure, as well as a reconciliation of the two.  Such reconciliations were deemed necessary to address the

proliferation of non-GAAP financial measures lacking a uniform definition and therefore carrying the risk of misleading investors.

59.    Omission of this material information makes the financial forecast tables for each of the GE O&G Forecasts, Baker Hughes Forecasts, Baker Hughes Forecasts for GE O&G and the New Baker Hughes Forecasts in the "Projected Financial Data" section of the Registration Statement false and/or misleading:

(a)    From page 91 of the Registration Statement:

| | GE O&G Forecasts ( *In billions* ) | | | | |
| | Year Ended December 31, | | | | |
| | 2016E | 2017E | 2018E | 2019E | 2020E |
|---|---|---|---|---|---|
| **Revenue** | $ 14.5 | $ 13.5 | $ 15.1 | $ 17.3 | $ 18.2 |
| **EBITDA (1)*** | $ 2.2 | $ 2.0 | $ 2.6 | $ 3.0 | $ 3.3 |
| **Free Cash Flow (2)** | $ 0.8 | $ 1.3 | $ 1.0 | $ 1.2 | $ 1.7 |

∗    Unlevered and normalized for items such as, but not limited to, restructuring, impacts from geopolitical events, currency devaluations or impairments.

(1) EBITDA is defined as earnings before interest, income taxes, depreciation and amortization. EBITDA is a non-GAAP financial measure, as it excludes amounts, or is subject to adjustments that effectively exclude amounts, included in the most directly comparable measure calculated and presented in accordance with GAAP in financial statements. EBITDA was used by management of GE O&G to provide additional information in order to provide them with an alternative method for assessing GE O&G's financial condition and operating results (including in comparison to other similar companies). These measures are not in accordance with, or a substitute for, GAAP, and may be different from or inconsistent with non-GAAP financial measures used by other companies. EBITDA should not be considered in isolation or as a substitute for net income, operating income, cash flows from operating activities or any other measure of financial performance presented in accordance with GAAP or as a measure of a company's profitability or liquidity.

(2) Free Cash Flow is defined as operating cash flows less capital expenditures plus proceeds from disposal of assets but not including proceeds from disposition of principal business units. In this context, Free Cash Flow was used by management of GE O&G to provide additional information with respect to available cash and liquidity. These measures are not in accordance with, or a substitute for, GAAP, and may be different from or inconsistent with non-GAAP financial measures used by other companies. Free Cash Flow should not be considered in isolation or as a substitute for cash flows from operating activities or any other measure of financial performance presented in accordance with GAAP or as a measure of a company's profitability or liquidity.

(b)    From page 94 of the Registration Statement:

| | **Baker Hughes Forecasts** ( *In billions* ) | | | | |
| | **Year Ended December 31,** | | | | |
| | 2016E | 2017E | 2018E | 2019E | 2020E |
| Revenue | $ 9.9 | $ 10.3 | $ 12.1 | $ 14.1 | $ 15.1 |
| EBITDA (1) ( * ) | $ 0.5 | $ 1.7 | $ 2.5 | $ 3.3 | $ 3.6 |
| Capital Expenditures | $ 0.3 | $ 0.6 | $ 0.7 | $ 0.9 | $ 0.9 |
| Free Cash Flow (2) | $ 4.0 | $ 0.6 | $ 0.9 | $ 1.2 | $ 1.6 |

\*    Unlevered and normalized for items such as, but not limited to, restructuring, impairments and impacts related to a merger agreement terminated in 2016.

(1) EBITDA is defined as earnings before interest, income taxes, depreciation and amortization. EBITDA is a non-GAAP financial measure, as it excludes amounts, or is subject to adjustments that effectively exclude amounts, included in the most directly comparable measure calculated and presented in accordance with GAAP in financial statements. EBITDA was used by management of Baker Hughes to provide additional information in order to provide them with an alternative method for assessing Baker Hughes' financial condition and operating results (including in comparison to other similar companies). These measures are not in accordance with, or a substitute for, GAAP, and may be different from or inconsistent with non-GAAP financial measures used by other companies. EBITDA should not be considered in isolation or as a substitute for net income, operating income, cash flows from operating activities or any other measure of financial performance presented in accordance with GAAP or as a measure of a company's profitability or liquidity.

(2) Free Cash Flow is defined as operating cash flows less capital expenditures plus proceeds from disposal of assets (if any). Free Cash Flow was used by Baker Hughes' management to provide additional information with respect to available cash and liquidity. These measures are not in accordance with, or a substitute for, GAAP, and may be different from or inconsistent with non-GAAP financial measures used by other companies. Free Cash Flow should not be considered in isolation or as a substitute for cash flows from operating activities or any other measure of financial performance presented in accordance with GAAP or as a measure of a company's profitability or liquidity. The estimates of Free Cash Flow contained in the Baker Hughes Forecasts are sometimes referred to as "Baker Hughes' Free Cash Flows," the estimates of Free Cash Flow contained in the Baker Hughes Forecasts for GE O&G are sometimes referred to as "GE O&G Free Cash Flows" and the estimates of Free Cash Flow contained in the New Baker Hughes Forecasts are sometimes referred to as "New Baker Hughes Free Cash Flows."

(c)      From page 95 of the Registration Statement:

| | **Baker Hughes Forecasts for GE O&G** ( *In billions* ) | | | | |
| | **Year Ended December 31,** | | | | |
| | 2016E | 2017E | 2018E | 2019E | 2020E |
| Revenue | $ 14.5 | $ 13.5 | $ 15.1 | $ 17.3 | $ 18.2 |
| EBITDA (1) (**) | $ 2.2 | $ 2.0 | $ 2.5 | $ 3.0 | $ 3.3 |
| Capital Expenditures | $ 0.4 | $ 0.4 | $ 0.4 | $ 0.4 | $ 0.5 |
| Free Cash Flow (2) | $ 0.8 | $ 1.3 | $ 1.0 | $ 1.2 | $ 1.7 |

\*\*    Unlevered and normalized for items such as, but not limited to, restructuring, impacts from geopolitical events, currency devaluations or impairments.

(1) EBITDA is defined as earnings before interest, income taxes, depreciation and amortization. EBITDA is a non-GAAP financial measure, as it excludes amounts, or is subject to adjustments

that effectively exclude amounts, included in the most directly comparable measure calculated and presented in accordance with GAAP in financial statements. EBITDA was used by management to provide additional information in order to provide them with an alternative method for assessing financial condition and operating results (including in comparison to other similar companies). These measures are not in accordance with, or a substitute for, GAAP, and may be different from or inconsistent with non-GAAP financial measures used by other companies. EBITDA should not be considered in isolation or as a substitute for net income, operating income, cash flows from operating activities or any other measure of financial performance presented in accordance with GAAP or as a measure of a company's profitability or liquidity.

(2) Free Cash Flow is defined as operating cash flows less capital expenditures plus proceeds from disposal of assets (if any). Free Cash Flow was used by Baker Hughes' management to provide additional information with respect to available cash and liquidity. These measures are not in accordance with, or a substitute for, GAAP, and may be different from or inconsistent with non-GAAP financial measures used by other companies. Free Cash Flow should not be considered in isolation or as a substitute for cash flows from operating activities or any other measure of financial performance presented in accordance with GAAP or as a measure of a company's profitability or liquidity. The estimates of Free Cash Flow contained in the Baker Hughes Forecasts are sometimes referred to as "Baker Hughes' Free Cash Flows," the estimates of Free Cash Flow contained in the Baker Hughes Forecasts for GE O&G are sometimes referred to as "GE O&G Free Cash Flows" and the estimates of Free Cash Flow contained in the New Baker Hughes Forecasts are sometimes referred to as "New Baker Hughes Free Cash Flows."

(d)      From page 96 of the Registration Statement:

| | New Baker Hughes Forecasts ( *In billions* ) | | | | |
|---|---|---|---|---|---|
| | Year Ended December 31, | | | | |
| | 2016E | 2017E | 2018E | 2019E | 2020E |
| Revenue | $  24.4 | $  23.8 | $  27.2 | $  31.4 | $  33.0 |
| EBITDA (1) | $  2.7 | $  4.0 | $  5.6 | $  7.1 | $  8.1 |
| Capital Expenditures | $  0.7 | $  0.9 | $  1.0 | $  1.2 | $  1.3 |
| Free Cash Flow (2) | $  4.8 | $  2.1 | $  2.4 | $  3.0 | $  4.1 |

(1) EBITDA is defined as earnings before interest, income taxes, depreciation and amortization. EBITDA is a non-GAAP financial measure, as it excludes amounts, or is subject to adjustments that effectively exclude amounts, included in the most directly comparable measure calculated and presented in accordance with GAAP in financial statements. EBITDA was used by Baker Hughes' management to provide additional information in order to provide them with an alternative method for assessing Baker Hughes', GE O&G's and New Baker Hughes' financial condition and operating results (including in comparison to other similar companies). These measures are not in accordance with, or a substitute for, GAAP, and may be different from or inconsistent with non-GAAP financial measures used by other companies. EBITDA should not be considered in isolation or as a substitute for net income, operating income, cash flows from operating activities or any other measure of financial performance presented in accordance with GAAP or as a measure of a company's profitability or liquidity.

(2) Free Cash Flow is defined as operating cash flows less capital expenditures plus proceeds from disposal of assets (if any). Free Cash Flow was used by Baker Hughes' management to provide

additional information with respect to available cash and liquidity. These measures are not in accordance with, or a substitute for, GAAP, and may be different from or inconsistent with non-GAAP financial measures used by other companies. Free Cash Flow should not be considered in isolation or as a substitute for cash flows from operating activities or any other measure of financial performance presented in accordance with GAAP or as a measure of a company's profitability or liquidity. The estimates of Free Cash Flow contained in the Baker Hughes Forecasts are sometimes referred to as "Baker Hughes' Free Cash Flows," the estimates of Free Cash Flow contained in the Baker Hughes Forecasts for GE O&G are sometimes referred to as "GE O&G Free Cash Flows" and the estimates of Free Cash Flow contained in the New Baker Hughes Forecasts are sometimes referred to as "New Baker Hughes Free Cash Flows."

***Material Omissions Concerning Goldman's Financial Analyses***

60.     The Registration Statement also describes Goldman's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Baker Hughes' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in making their voting decision in connection with the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Baker Hughes' stockholders.

61.     The Registration Statement fails to disclose various material elements of the financial analysis performed by Goldman.  For example, with respect to Goldman's *Illustrative Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (a) the individual inputs and assumptions utilized by Goldman to derive the discount rate ranges for Baker Hughes, GE O&G and New Baker Hughes following closing of 9% to 11%, 8% to 10% and 8% to 10%, respectively; (b) the implied terminal pricing multiples corresponding to the assumed perpetuity growth rates of 2% to 4%; and (c) the illustrative range of present values on a per share basis for GE O&G standalone.

62. Omission of this material information makes the *Illustrative Discounted Cash Flow Analysis* summary in the "Opinion of Bakers Hughes' Financial Advisor" section of the Registration Statement false and/or misleading:

(a) From page 102 of the Registration Statement:

### Illustrative Discounted Cash Flow Analysis

Using the Baker Hughes Forecasts and the Baker Hughes Forecasts for GE O&G, Goldman Sachs performed an illustrative discounted cash flow analysis on each of Baker Hughes and GE O&G on a standalone basis and an illustrative discounted cash flow analysis on New Baker Hughes on a pro forma basis assuming consummation of the Transactions.

*Baker Hughes Standalone*

Using the Baker Hughes Forecasts, financial information from Capital IQ and market data, Goldman Sachs performed an illustrative discounted cash flow analysis on a standalone basis to generate ranges for the implied present value per share of Baker Hughes common stock. Using discount rates ranging from 9.0% to 11.0%, reflecting estimates of the weighted average cost of capital of Baker Hughes, Goldman Sachs discounted to present values, as of September 30, 2016, estimates of Baker Hughes' Free Cash Flows (as defined and set forth in the Baker Hughes Forecasts) for the period September 30, 2016 to December 31, 2020, assuming mid-year convention and illustrative terminal values using perpetuity growth rates ranging from 2.0% to 4.0%. The range of perpetuity growth rates was estimated by Goldman Sachs using its professional judgment and experience and taking into account market expectations regarding long-term real growth of gross domestic product and inflation. Goldman Sachs then calculated the implied value per share of Baker Hughes common stock by dividing the equity value by the number of fully diluted outstanding shares of Baker Hughes according to the Baker Hughes Forecasts. This analysis indicated a range of equity values of $17.8 billion to $29.4 billion and an illustrative range of present values of $41.66 to $68.47 per share of Baker Hughes common stock.

*GE O&G Standalone*

Goldman Sachs also performed an illustrative discounted cash flow analysis of GE O&G on a standalone basis using the Baker Hughes Forecasts for GE O&G, financial information from Capital IQ and market data to generate reference ranges for the equity value of GE O&G. Using discount rates ranging from 8.0% to 10.0%, reflecting estimates of the weighted average cost of capital of GE O&G, Goldman Sachs calculated an illustrative range of implied equity values for GE O&G by discounting to present values, as of September 30, 2016, estimates of GE

O&G's Free Cash Flows (as defined and set forth in the Baker Hughes Forecasts for GE O&G) for the period October 1, 2017 to December 31, 2020, assuming a mid-year convention and terminal values using perpetuity growth rates ranging from 2.0% to 4.0%.  The range of perpetuity growth rates was estimated by Goldman Sachs using its professional judgment and experience and taking into account market expectations regarding long-term real growth of gross domestic product and inflation.  This analysis indicated an illustrative range of equity values of $17.8 billion to $34.2 billion for GE O&G.

*New Baker Hughes Pro forma Assuming Closing*

Using the New Baker Hughes Forecasts, Goldman generated reference ranges for the implied value per share of Baker Hughes common stock following Closing. Using discount rates ranging from 8.0% to 10.0%, reflecting estimates of the pro forma weighted average cost of capital of New Baker Hughes, Goldman Sachs calculated an illustrative range of implied enterprise values for New Baker Hughes by discounting to present values, as of September 30, 2016, estimates of New Baker Hughes Free Cash Flows for the period September 30, 2016 to December 31, 2020, excluding GE O&G Free Cash Flows generated during the period beginning September 30, 2016 and ending September 30, 2017, assuming a mid-year convention and terminal values using perpetuity growth rates ranging from 2.0% to 4.0%.  The range of perpetuity growth rates was estimated by Goldman Sachs using its professional judgment and experience and taking into account market expectations regarding long-term real growth of gross domestic product and inflation.  This analysis indicated an illustrative range of present values of $52.31 to $81.06 per share of Baker Hughes common stock excluding the Baker Hughes Synergies, and a range of $60.59 to $97.24 per share of Baker Hughes common stock including the Baker Hughes Synergies.

### Material Omissions Concerning the Background and Sale Process Leading Up to the Proposed Transaction

63.     The Registration Statement omits the following material information concerning the background of the Proposed Transaction and the sale process.

64.     The Registration Statement sets forth that effective following the close of the Proposed Transaction "the New Baker Hughes Board . . . will include six GE designees and five Baker Hughes designees" with "Martin Craighead, Baker Hughes Chairman and Chief Executive Officer, serving as New Baker Hughes Vice Chairman."

65.     However, the Registration Statement completely fails to set forth any of the employment related discussions and negotiations that occurred between GE and Baker

Hughes' executive officers, including Defendant Craighead.  The Registration Statement further fails to disclose whether any of GE's prior proposals or indications of interest mentioned management retention or the potential for Board members to sit on the combined company's board of directors.

66.    Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

67.    In addition, the Registration Statement sets forth that during the process of seeking regulatory approvals for the Halliburton transaction, Baker Hughes entered into confidentiality agreements with a subsidiary of GE and other strategic companies and financial sponsors that expressed an interest in an acquisition of, among other things, Baker Hughes' core completions business, sand control business in the Gulf of Mexico and offshore cementing businesses.  The Registration Statement fails to expressly indicate whether any of these confidentiality agreements contained standstill provisions that are still in effect and/or "don't-ask-don't-waive" standstill provisions that are presently precluding these industry participants from making a topping bid for the Company.

68.    Omission of this material information makes the "Background of the Transactions" and "Recommendation of the Board of Directors and its Reasons for the Transactions" sections of the Registration Statement false and/or misleading:

(a)    From page 84 of the Registration Statement:

The fact that the New Baker Hughes Board, immediately after Closing, will include six GE designees and five Baker Hughes designees, with Jeff Immelt, GE Chairman and Chief Executive Officer, serving as New Baker Hughes Chairman and Martin Craighead, Baker Hughes Chairman and Chief Executive Officer, serving as New Baker Hughes Vice Chairman.  The successor Baker Hughes directors will be chosen by the Governance & Nominating Committee of the New Baker Hughes Board, which will be comprised of a majority of Baker Hughes directors who meet certain independence requirements.

(b)     From page 75 of the Registration Statement:

During the process of seeking regulatory approvals for the Halliburton transaction, on October 30, 2015, Baker Hughes and GE Oil & Gas UK Limited, a subsidiary of GE, entered into a confidentiality agreement in connection with GE O&G's consideration of a possible acquisition of, among other things, Baker Hughes' core completions business, sand control business in the Gulf of Mexico and offshore cementing businesses, in the event such businesses were divested, for antitrust reasons, in connection with the Halliburton transaction.  Baker Hughes also entered into similar confidentiality agreements with other strategic companies and financial sponsors that expressed an interest in such acquisitions.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

69.     Plaintiff repeats all previous allegations as if set forth in full.

70.     SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated pursuant to Section 14(a) of

the Exchange Act, provides:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

71.     During the relevant period, Defendants disseminated the false and misleading

Registration Statement specified above, which failed to disclose material facts necessary in order

to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

72.     By virtue of their positions within the Company, Defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by Defendants.  The Registration Statement misrepresented and/or omitted material facts, including material information about the unfair sale process for the Company, the financial analyses performed by the Company's financial advisor, and the actual intrinsic standalone value of the Company. Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

73.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to stockholders.

74.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

75.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure Defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

76.     Plaintiff repeats all previous allegations as if set forth in full.

77.     The Individual Defendants acted as controlling persons of Baker Hughes within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Baker Hughes and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

78.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

79.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

80.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues

and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

81.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

82.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Baker Hughes, and against Defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Baker Hughes stockholders;

C.    In the event that Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

DATED:  May 10, 2017.

Respectfully submitted,


_____/s/ Thomas E. Bilek_____

Thomas E. Bilek
TX Bar No. 02313525 / SDTX Bar No. 9338
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720

*Attorneys for Plaintiff*


**OF COUNSEL:**

Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY  10036
Tel: (212) 682-3025
Fax: (212) 682-3010